Case 1:17-cv-00007 Document 98 Filed on 09/28/17 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
September 28, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RODRIGO MOSQUERA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. B-17-7 |
| | § | |
| DAMON HININGER, ET AL., | § | |
|     Defendants. | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On May 31, 2017, Plaintiff Rodrigo Mosquera filed a motion to amend his complaint. Dkt. No. 65. That motion is currently pending before the Court. The proposed amended complaint seeks to add additional defendants and claims.

On June 20, 2017, Defendants timely filed a response, opposing the proposed amendment as futile. Dkt. No. 67. On August 17, 2017, Mosquera filed a reply brief.

After reviewing the record and the relevant case law, the motion to amend should be granted in part and denied in part.[1]

---

[1] It is not entirely clear whether the undersigned has the authority to decide this motion or whether it must be decided by the District Judge. The First, Second, Seventh and Tenth Circuits have held that a magistrate judge has the authority to deny a motion to amend. Pagano v. Frank, 983 F.2d 343, 346 (1st Cir. 1993); Kilcullen v. New York State Dep't of Transp., 55 F. App'x 583, 585 (2d Cir. 2003) (unpubl.); Hall v. Norfolk S. Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006); Franke v. ARUP Labs., Inc., 390 F. App'x 822, 828 (10th Cir. 2010). The Fifth Circuit has not ruled on this issue. District Courts across the country are split on this issue. Compare Children First Found., Inc. v. Martinez, No. 1:04-CV-0927 (NPM), 2007 WL 4618524, at *4 (N.D.N.Y. Dec. 27, 2007) (magistrate judges do not have the authority to deny a motion to amend if the denial is based on the futility of the proposed amendment) with Cazares v. Morris, No. CV-09-2168-PHX-ROS, 2011 WL 2414543, at *2 (D. Ariz. June 16, 2011) (holding that the magistrate judge has the authority to deny a motion to amend, so long as the ruling is not dispositive of the plaintiff's existing claims). Given the unsettled state of the law on this issue, the Court errs on the side of caution and submits this report and recommendation.

**I. Background**

    **A. Factual Background**

This factual background is taken from the proposed amended complaint, but has been condensed to address only the currently relevant issues. Mosquera is a state prisoner whose complaint revolves around his purported exposure to secondhand smoke from artificial marijuana (also known as "K2" or "spice"), while incarcerated at the Willacy County State Jail ("Willacy"). After conducting some discovery, Mosquera seeks to add additional plaintiffs and claims to his complaint. The Court will discuss each proposed defendant individually.

    **1. Jacob Guerra**

Mosquera alleges that Jacob Guerra, who serves as the grievance officer at Willacy, lost two grievances that Mosquera filed. Dkt. No. 65, p. 1. According to Mosquera, on January 4, 2017, the grievances were resubmitted to Guerra, who said he would investigate them and contact Mosquera, but never actually did. Id. Mosquera alleges that by not properly investigating his grievances, Guerra showed deliberate indifference to his serious medical needs; subjected him to cruel and unusual punishment; and violated his First Amendment rights "by obstructing and impeding the grievance process." Id. Mosquera claims that Guerra deprived him of his "Fourteenth Amendment due process rights as well as First Amendment right to grievance." Dkt. No. 87, p. 4.

    **2. Fidencio Cacique**

Mosquera alleges that on March 6, 2017, he sent a letter to his mental health therapist, "voicing his dissatisfaction with her recent sessions and the fact that he was still being exposed to second hand toxic smoke from synthetic marihuana." Dkt. No. 65, p. 4.

The next day, Mosquera was called to a meeting at his therapist's office. Id. When he arrived, Cacique – a lieutenant at Willacy – was there with the therapist and another correctional officer. Id. Cacique threatened to discipline Mosquera for trying to establish a romantic relationship with the therapist, because Mosquera's letter used "dear" as a

2

salutation. Id. Cacique also told Mosquera that the letter to his therapist was "invalid," because it was not written on the proper form.

Mosquera alleges that "Cacique's threatening behavior made Mosquera anxious and fearful and took up a [therapy] session which Mosquera needed for [his] mental health." Dkt. No. 65, p. 5. He claims that Cacique unlawfully retaliated against him for exercising his constitutional rights. Id.

### 3. Francisco Montalvo

Mosquera's claims against Montalvo – a gang intelligence investigator at Willacy – are not a model of clarity. Indeed, his narrative is disjointed and rambling.

As best as the Court can tell, Mosquera is claiming that on January 9, 2017, Mosquera filed a grievance against Montalvo for conducting an unannounced search of his prison cell. Dkt. No. 65, p. 5. Mosquera claimed that Montalvo does not normally conduct searches and that it was retaliation for his complaints regarding the smoke. Id. The grievance, however, was dated as having been received on January 27, 2017, which was more than 21 days after the incident occurred.

According to Mosquera, prison rules require that grievances must be filed within 21 days of the incident that forms the basis for the grievance. Dkt. No. 65, p. 5. Because of the alleged delay in filing the grievance, it could have been rejected as untimely filed. Despite this discrepancy, Mosquera's grievance was addressed and was not denied because it was allegedly untimely filed. See Dkt. No. 65-1, p. 2 (a copy of the response to the grievance).

Because his grievance was not resolved to his satisfaction, Mosquera filed an appeal of the resolution, known as a "step two" grievance. Dkt. No. 65, pp. 5-6. His grievance was answered, but Mosquera claims that the answer "was incongruous to Mosquera's claim of harassment and retaliation against Montalvo" and that it "invited Mosquera into a merry-go-round of administrative actions again – but Mosquera won't be fooled." Id.

It appears that Mosquera is alleging that Montalvo retaliated against him by searching his cell and by keeping his grievances from being properly handled.

### 4. Paul B. Arguijo

Mosquera alleges that Arguijo, the assistant warden at Willacy, was aware of the smoke and its effect on Mosquera. Mosquera alleges that, on November 8, 2016, Arguijo and three other co-defendants were present for a meeting with Mosquera. Dkt. No. 65, p. 2. At that meeting, Mosquera told Arguijo about the secondhand synthetic smoke. Id. Mosquera also alleged that he told Arguijo that three inmates were threatening him because they found out that Mosquera had been complaining about the smoking. Id.

According to the proposed amended complaint, Mosquera informed Arguijo that some of the grievances Mosquera had previously filed – concerning the secondhand smoke – were missing and had not been responded to. Id. Arguijo promised to resolve the issue of Mosquera's missing grievances, but never did. Id.

Mosquera alleges that on February 18, 2017, he was assaulted; Mosquera does not identify his attackers.

Mosquera alleges that Arguijo showed deliberate indifference to his serious medical needs, obstructed the grievance process, and failed to protect him from violence.

### 5. All Defendants

Mosquera also seeks to file a cause of action against all defendants – both current and proposed – in their official and individual capacities.

### B. Procedural History

On January 18, 2017, Mosquera filed a complaint against 12 defendants Dkt. No. 1. On that same day, Mosquera filed a motion to proceed in forma pauperis. Dkt. No. 2.

On January 19, 2017, the Court issued a series of interrogatories for Mosquera to complete, so that he could show the factual basis for his claims. Dkt. No. 6. On March 9, 2017, Mosquera filed his answers to the interrogatories. Dkt. No. 23.

On March 10, 2017, the Court granted the motion to proceed in forma pauperis in part and denied it in part. Dkt. No. 24. As to the claims made – in the original complaint – against defendants Damon Hininger, Dale Wainwright, Orlando Perez, Erica L. Briones, and

Jacob Guerra, the motion was denied, because Mosquera had alleged some form of supervisory liability against them, which is not permitted in § 1983 cases. Id. As to defendants Oscar Mendoza, Santos Lozano, Michael Sizemore, John Crenshaw, Fidencio Cacique, Crystal Olivares, and Francisco Montalvo, the motion to proceed IFP was granted. Id.

On May 31, 2017, Plaintiff Rodrigo Mosquera filed a motion to amend his complaint, seeking to add the claims that were set out in the factual background above. Dkt. No. 65. On June 20, 2017, Cacique, Crenshaw, Montalvo, Olivares and Sizemore filed a response, opposing the motion to amend. Dkt. No. 67. While Arguijo did not file an appearance to contest the amendment, the response did address the claims made against him. As to each of these defendants, they opposed the motion on the grounds that the proposed amendments were futile. On August 17, 2017, Mosquera filed a reply brief. Dkt. No. 87.

## II. Applicable Law

### A. Amendment

FED. R. CIV. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant[;] repeated failure to cure deficiencies by amendments previously allowed[;] undue prejudice to the opposing party by virtue of allowance of the amendment[;] futility of amendment[;] etc. – the leave sought should, as the rules require, be 'freely given.' " Foman v. Davis, 371 U.S. 178, 182 (1962). Rule 15(a) promotes a policy of deciding litigation on the merits rather than procedural technicalities. Mayeaux v. Louisiana Health Service and Indem. Co., 376 F.3d 420, 427 (5th Cir. 2004).

In determining whether a proposed amended claim is futile, the Court reviews it under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000). "A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not

5

a procedure for resolving contests about the facts or merits of the case . . . . [T]he Court must take the plaintiffs' allegations as true, view them in a light most favorable to plaintiffs, and draw all inferences in favor of the plaintiffs." Askanase v. Fatjo, 828 F. Supp. 465, 469 (S.D. Tex. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991)).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Consistent with this requirement, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 589. "[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002). Whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009).

### B. Prison Litigation Reform Act

Under the Prison Litigation Reform Act, the Court shall – on its own motion or on the motion of a party – dismiss any action filed by a prisoner if the action "fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915A(b)(1). The Court is required to screen claims made by prisoners against an employee of a governmental entity. 28 U.S.C. § 1915A(a).

## III. Analysis

In analyzing Mosquera's claims, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). While

the Court will "read pro se complaints liberally, pro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012).

While some of the acts of the proposed defendants are questionable, those acts do not necessarily constitute grounds for a claim under § 1983. Indeed, very few of the acts constitute legitimate claims pursuant to § 1983. Accordingly, as discussed below, Mosquera's motion to amend should be granted in part and denied part.

**A. Guerra**

Here, Mosquera alleges that Guerra – the grievance officer at Willacy – lost two grievances that Mosquera filed and did not act to protect him from the secondhand smoke. Dkt. No. 65, p. 1. These claims are futile and the amendment should be denied.

As to any claims regarding lost, unanswered or poorly answered grievances, Mosquera does not raise a cognizable constitutional claim. Mosquera "does not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices; thus, the denials of his grievances do not implicate his constitutional rights or give rise to a 42 U.S.C. § 1983 claim." Burgess v. Reddix, 609 Fed. App'x. 211, 212 (5th Cir. 2015) (unpubl.) (citing Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)).

As to any claims, that Guerra acted with deliberate indifference to his serious medical needs, an amendment should be denied. "A prison official acts with deliberate indifference only if the official: (1) knows that inmates face a substantial risk of serious bodily harm; and (2) disregards that risk by failing to take reasonable measures to abate it." Zaunbrecher v. Gaudin, 641 F. App'x 340, 344 (5th Cir.), cert. denied, 137 S. Ct. 58, 196 L. Ed. 2d 31 (2016) (internal quotations omitted). The deliberate indifference standard is "an extremely high standard to meet" and requires evidence of "egregious intentional conduct." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Mosquera has not met this standard.

The Court will assume, for the sake of argument, that Mosquera's grievances would

7

have given Guerra knowledge that Mosquera faced a substantial risk of serious bodily harm from the secondhand smoke. This knowledge would meet the first element of the deliberate indifference test. However, inherent in the second element of the test is the requirement that the defendant have the authority to abate the danger. See Lowe v. Davenport, 442 F. App'x 955, 956 (5th Cir. 2011) (a defendant that lacked the authority to prescribe medications was not deliberately indifferent); Thayer v. Adams, 364 F. App'x 883, 891 (5th Cir. 2010) (a defendant who had "no authority to prescribe drugs or embark on a different course of treatment" was not deliberately indifferent); Palmisano v. Franco, 264 F.3d 1141 (5th Cir. 2001) (defendant who was not "personally involved in any decisions regarding environmental tobacco smoke" was not deliberately indifferent).

In this case, Mosquera has pled no facts showing that Guerra had any authority, as a grievance officer, to prevent the smoking from occurring or was personally involved in any decisions regarding the smoking. Accordingly, Mosquera has not pled facts showing that Guerra was required to take reasonable steps to abate the smoking. This claim is futile and should be denied.

**B. Cacique**

Mosquera alleges that Cacique, a lieutenant at Willacy, retaliated against him for exercising his constitutional rights. This claim is similarly futile.

The Court begins by noting that prison retaliation cases are to be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Clearly, that caution applies in this case.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). Furthermore, the retaliatory adverse act cannot be "de minimis" and must be "capable of deterring a person of ordinary firmness from further

8

exercising his constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). A mere personal belief by a prisoner that he is the victim of retaliation is not enough to state a constitutional claim. Jones, 188 F.3d at 325.

Even if the Court assumes that Mosquera can prove the first two elements of a retaliation claim, he has not pled facts to establish the third element: a retaliatory adverse act. Mosquera alleges that Cacique spoke sternly to him and threatened him with a disciplinary write-up. Dkt. No. 65, p. 4. Mosquera does not allege that he was actually written up, only that the threat was made. The Fifth Circuit has held that a mere threat of future action is not a retaliatory adverse act. Bell v. Woods, 382 F. App'x 391, 393 (5th Cir. 2010) (citing Jones, 188 F.3d at 324-25). Thus, Mosquera has not pled any facts showing a retaliatory adverse act. Accordingly, the motion to amend should be denied as to this claim.

**C. Montalvo**

Mosquera alleges that Montalvo retaliated against him by searching his cell and by keeping his grievances from being properly handled. As with most of Mosquera's claims, this one is also futile.

Mosquera claims that Montalvo retaliated against him by conducting an unannounced search of Mosquera's prison cell, right after Mosquera complained about the smoke. Dkt. No. 65, p. 5. Mosquera claimed Montalvo gave him a disciplinary case for "having minor contraband," including rubber bands, shaving blades and borrowed reading materials. Dkt. No. 87, p. 12.

A single search of Mosquera's cell, resulting in a minor disciplinary write up is insufficient to show a retaliatory adverse act. See Morris v. Powell, 449 F.3d 682, 685 (5th Cir. 2006) ("a single incident, involving a minor sanction, is insufficient to prove [retaliatory] harassment.") (citing Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986)). This claim is futile and the motion to amend should be denied.

As to any claims regarding Mosquera's grievances, the motion to amend should be denied as futile. As previously noted, Mosquera has no constitutional rights in the grievance

process. Burgess, 609 Fed. App'x. at 212. The motion to amend should be denied as to this claim.

### D. Arguijo

Mosquera has alleged that Arguijo – the assistant warden – obstructed the grievance process; failed to protect him from violence from other inmates; and, showed deliberate indifference to his serious medical needs. The first claim should be denied; the second and third claims, however, should be permitted to proceed.

As to the claims regarding the grievances, the Court again notes that Mosquera has no protected constitutional interest in the grievance process. Burgess, 609 Fed. App'x. at 212. The motion to amend should be denied as to this claim.

As to the claims regarding the failure to protect Mosquera from violence at the hands of other inmates, the motion to amend should be granted. "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." Longoria v. Texas, 473 F.3d 586, 592 (5th Cir. 2006). Mosquera "must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to an inmate's safety." Id.

Mosquera alleges that on November 8, 2016, he informed Arguijo that three inmates were threatening him because he was complaining about the smoke. Dkt. No. 65, p. 2. Mosquera alleges that on February 18, 2017 – three months later – he was assaulted by unidentified inmates. Dkt. No. 87, p. 6. Mosquera alleges that "Arguijo did nothing" in response to being told about the threatened violence, and that he did not move Mosquera out of the same dorm as the inmates who were threatening him or place him in protective custody. Id, p. 7.

Mosquera has alleged facts that, if proven, would show deliberate indifference by Arguijo. He has pled that he informed Arguijo of the risk of violence and that Arguijo took no corrective measures to protect him. Arguijo is not required to respond perfectly to the complaint; there is no liability for a prison official who "responded reasonably to the risk,

even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994). Because Mosquera has pled that Arguijo took no action to protect him, it raises the reasonable inference that Arguijo was aware of the risk and consciously chose not to address it. This pleading states a claim upon which relief can be granted and the motion to amend should be granted as to this claim.

As to the claim that Arguijo was deliberately indifferent to his serious medical needs, again, the motion to amend should be granted.

As was previously noted, in order to state a claim, Mosquera must plead facts showing that Arguijo knew that Mosquera faced a substantial risk of serious bodily harm and disregarded that risk by not acting reasonably to prevent the harm. Zaunbrecher, 641 F. App'x at 344.

Mosquera alleges that on November 8, 2016, he informed Arguijo about the smoke and its effect on him. Dkt. No. 65, p. 2. Thus, Mosquera has pled facts showing that Arguijo was aware of the substantial risk of bodily harm, meeting the first element.

Mosquera has further alleged that Arguijo took no action to protect him from the secondhand smoke. As previously noted, Arguijo is not required to be clairvoyant and prevent all harm, but he is required to take reasonable steps to prevent harm. Farmer, 511 U.S. 844. Furthermore, as the assistant warden, it would appear that he possessed the authority to take such reasonable steps.

Accordingly, Mosquera has stated a claim upon which relief can be granted; thus, the motion to amend should be granted.

### E. Official Capacity

Mosquera seeks to amend his complaint to make claims against all defendants in their individual and official capacities. As his claims currently exist, they are only against the defendants in their individual capacity. For the reasons set out below, the motion to amend should be denied to the extent that Mosquera seeks to assert claims against the defendants in their official capacities.

11

A claim against a government official in his or her official capacity constitutes a suit against the government agencies that they are employed by. Culbertson v. Lykos, 790 F.3d 608, 623 (5th Cir. 2015). The government agency cannot be held liable under Section 1983, without proof that an official policy or custom caused the constitutional violation and the policy was adopted with deliberate indifference. Sanders-Burns v. City of Plano, 594 F.3d 366, 380-81 (5th Cir. 2010). In order to make such a showing, a plaintiff generally must identify an official policy adopted by the agency or show a pattern of similar constitutional violations, that indicates the existence of an informal custom or practice. Valle v. City of Houston, 613 F.3d 536, 542, 547 (5th Cir. 2010).

Here, Mosquera has made no showing that the agencies which employ the defendants adopted an official policy of allowing unconstitutional harms to occur. Nor has he identified a pattern of similar violations. In other words, there is no basis for claims against any defendant in their official capacity. The motion to amend should be denied as to this claim.

## IV. Recommendation

The motion to amend filed by Mosquera should be granted in part and denied in part. Dkt. No. 65.

As to the claims made against Paul Arguijo – for deliberate indifference to violence perpetrated by other inmates and deliberate indifference to Mosquera's serious medical needs as it related to the second hand smoke – the motion should be granted.

As to any other claims made against any other parties in the motion to amend, the motion should be denied.

### A. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking

on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

      DONE at Brownsville, Texas, on September 28, 2017.

                                                _____  
                                                Ronald G. Morgan  
                                                United States Magistrate Judge